UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**JEFFREY D. COTTRELL,** *et al.*,  )
                                    )
       Plaintiffs,             )
                                    )
       v.                      )    Civil Action No. 11-1511 (RMC)
                                    )
**TOM VILSACK, Secretary,**         )
**Department of Agriculture,**      )
                                    )
       Defendant.              )
_____ )

**OPINION**

        Pro se plaintiff Jeffrey Cottrell alleges that the U.S. Department of Agriculture (USDA) discriminated against him in violation of the Equal Credit Opportunity Act and the Age Discrimination in Federal Programs Act, failed to investigate his civil rights complaints in violation of the Administrative Procedure Act, violated the Privacy Act, and denied him procedural due process. USDA moves to dismiss because the claims are barred by res judicata due to multiple prior law suits; because the claims were filed out of time; and because the Complaint otherwise fails to state a claim. As explained below, the motion to dismiss will be granted.

**I.  FACTS**

        Starting in 1989, Jeffrey Cottrell filed administrative complaints as well as various federal lawsuits against USDA regarding his attempts to participate in two separate benefits programs—the Production Flexibility Contract (PFC) program and the Conservation Reserve Program (CRP). He now sues again, based on the same underlying facts.

1

**A. 1989 CRP Claim**

In 1989, Mr. Cottrell was 22 years old. He leased and farmed 2 parcels of land, consisting of more than 538 acres in Coshocton and Knox Counties, Ohio. The land was owned by his grandmother, Lucille Stuller. Mr. Cottrell had entered into long-term leases for the farms, with options to purchase. On July 17, 1989, he and his grandmother applied for a ten-year CRP agreement with USDA.

CRP is an agricultural program created to aid owners and operators of highly erodible cropland in conserving and improving the soil and water resources of their farms or ranches. 16 U.S.C. § 3831(a). To implement the program, USDA is authorized to enter into rental contracts with the owners/operators of eligible land. *Id.* § 3831(e). Such rental contracts provide that USDA will pay rent to the owner/operator in exchange for the owner/operator's agreement to use the land for purposes that promote conservation such as for grass or pasture. *Id.* §§ 3832(a)(1), 3833. To qualify for CRP, an applicant must include (1) a conservation plan approved by the district in which the lands are located, 7 C.F.R. § 1410.3, and (2) non-owner operators (like Plaintiff) must provide assurance of control of the land for the duration of the contract period. *Id.* § 1410.5.

Six weeks after Mr. Cottrell leased the two parcels, on September 4, 1989, Ms. Stuller died. She had four children who were heirs to 1,754 acres of land, including the land she had leased to Mr. Cottrell. While the District Conservationist approved Mr. Cottrell's conservation plan on September 5, 1989 (thereby satisfying the first of the prerequisites to qualify for CRP), on November 14, 1989, the Coshocton County Agricultural Stabilization and

Conservation Service Committee (County Committee)[1] sent Mr. Cottrell a letter indicating that he had not shown that he had control over the land for the full contract period. The County Committee indicated that approval of his application would be delayed pending consent of the executor and all heirs to Ms. Stuller's estate. Mr. Cottrell was not able to obtain the consent of the heirs.

For twelve years after the death of Ms. Stuller, her heirs litigated the rights to her land. Mr. Cottrell and his mother took an adversarial position against his aunts and uncle, who claimed that the leases expired upon Ms. Stuller's death and that the option rights were then extinguished. The heirs sought partition of the land. *See* Mot. to Dismiss [Dkt. 15], Ex. A (2007 Final Decision) at 3.

In the meantime, Mr. Cottrell pursued his CRP application. He appealed the denial by the County Committee to the State Committee. The State Committee affirmed the denial on July 19, 1990. Mr. Cottrell then appealed to the Deputy Administrator of the Agricultural Stabilization and Conservation Service, and on March 3, 1991, the Deputy Administrator also affirmed the denial of his CRP application. The Deputy Administrator noted that its decision concluded Mr. Cottrell's administrative appeal rights.

Before the Deputy Administrator reached a determination of his claim,[2] Mr. Cottrell filed suit against USDA in the Southern District of Ohio, asserting that USDA's denial

---

[1] The Agricultural Stabilization Conservation Service is now known as the Farm Service Agency.

[2] At the time, exhaustion of administrative appeals was not required. In 1994, exhaustion became mandatory. 7 U.S.C. § 6912(e); *see* Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, Pub. L. No. 103-354 (codified mainly at 7 U.S.C. § 6991 *et seq.*).

of his CRP application was arbitrary and capricious. The district court denied the claim and entered judgment in favor of USDA, and the Sixth Circuit affirmed. *See Cottrell v. Yuetter*, 38 F.3d 1215, 1994 WL 560967 at *1, *3 (6th Cir. Oct. 11, 1994) (Table; Text in Westlaw). The Sixth Circuit noted:

> Cottrell must concede that the specter of a will contest between heirs apparent looming on the horizon might well lead one to conclude that there is certainly *not* satisfactory evidence of Cottrell's long-term control of the land, regardless of the actual outcome of any such will contest.

*Id*. at *3.

About five years later, Mr. Cottrell filed another case in the Southern District of Ohio against the USDA. *See Cottrell v. Glickman*, Civ. No. 2:99-282 (S.D. Ohio, filed March 18, 1999). In that second suit, he alleged breach of contract, claiming that his CRP application was an offer that USDA accepted when it approved his conservation plan. On July 18, 2000, the district court dismissed the case for three reasons: (1) the district court lacked jurisdiction, since jurisdiction rested with the Court of Claims; (2) Mr. Cottrell failed to exhaust administrative remedies; and (3) res judicata barred the suit since he should have raised the breach of contract claim in the prior district court case. *See Cottrell v. United States*, 71 Fed. Cl. 559, 561 (Ct. Cl. 2006) (relying on the case record and describing the 1999 suit).[3]

In 2001, the family litigation over rights to Ms. Stuller's estate finally ended. The Ohio Supreme Court declined to hear an appeal of a decision by the Ohio Appellate Court. The Appellate Court had ruled that Mr. Cottrell owned the land he had originally leased from his

---

[3] The district court opinion dismissing this suit was not published.

grandmother, since he had exercised his options to purchase. *See* 2007 Final Decision at 3 (describing Cottrell family litigation in Ohio state courts). [4]

Despite winning ownership rights to the two farms, Mr. Cottrell still continued to litigate. On September 13, 2005, he filed suit against USDA in the U.S. Court of Federal Claims. *See Cottrell v. United States*, 71 Fed. Cl. 559 (Ct. Cl. 2006). He alleged that USDA improperly denied his 1989 CRP application and thus breached a binding contract. The Court of Claims dismissed Mr. Cottrell's CRP claim, finding it was barred by the applicable six-year statute of limitations. *Id*. at 566.

### B. 1996 PFC Claim

In the 2005 Court of Claims suit, Mr. Cottrell also alleged that USDA wrongfully denied payment to him in 1996 under the Production Flexibility Contract (PFC) program. *Id*. at 562-63. PFC is an agricultural program designed to "support farming certainty and flexibility while ensuring continued compliance with farm conservation and wetland protection requirements." 7 U.S.C. § 7201(b)(1). Under this program, USDA agrees make an annual payment to owners or producers in exchange for compliance with certain planting, conservation, and land use restrictions. *Id*. § 7211(a). As with CRP, in order to participate in the PFC program, a non-owner operator must be able to demonstrate that he will maintain control over the land for the duration of the PFC contract. *Id*. § 7211(b).

Mr. Cottrell's PFC claim also concerns the two farms he leased from his grandmother. On December 1, 1994, Mr. Cottrell assigned one of the leases to his mother,

---

[4] During the years of family litigation, certain federal payments had been held in escrow. When the litigation ended, the state court ordered that the escrowed monies be distributed to the appropriate land owners.

Nancy Cottrell, in exchange for debt forgiveness. *Cottrell*, 71 Fed. Cl. at 562.  On July 12, 1996, Mr. Cottrell and his mother applied to enroll the two properties in the PFC program.  The County Committee determined that it could not issue payment because of the litigation regarding Ms. Stuller's estate.  Further, Mr. Cottrell's uncle, James Stuller, had raised questions regarding whether Mr. Cottrell had an interest in the leases at all, since one of them had expired and the other had been assigned to Nancy Cottrell.  *Id.*

On January 8, 2001, the County Committee reiterated that it could not issue payment unless Mr. Cottrell provided (1) an agreement signed by all the parties with a claim to the land or (2) a final court order.  *Id*. at 562-63.  Mr. Cottrell appealed, and on March 26, 2001, the National Appeals Division denied the appeal.  *Id*. at 563.  When the family estate litigation ended, Mr. Cottrell sent the final court determination to the County Committee.  The County Committee responded by letter on August 15, 2001, indicating that it would consider Mr. Cottrell as owner of the property for the 1996 crop year, and Nancy Cottrell as tenant.  *Id*.  Because the PFC application incorrectly designated Nancy Cottrell as the owner, the County Committee denied the application; suggested that Mr. Cottrell submit a revised application; and noted that Mr. Cottrell had 30 days to appeal to the National Appeals Division.  Mr. Cottrell did not appeal.  Instead, he alleges that on September 17, 2001, the County Executive Director told him and his mother that if they did not agree to a revised PFC providing for all payment to Nancy Cottrell, no monies would be paid.  Mr. Cottrell asserts that he signed the revised PFC under duress.  As a result, Mr. Cottrell submitted an amended application, leading the Committee to make all PFC payments to his mother.  *Id*. at 568.

In the 2005 Court of Claims suit, Mr. Cottrell also alleged that USDA wrongfully denied payment for the 1996 PFC program. The Court of Claims dismissed the PFC claim, finding that Mr. Cottrell failed to exhaust administrative remedies. *Id*.

### C. 2006 Administrative Complaint

In 2006, Mr. Cottrell filed yet another claim, this time an administrative complaint with USDA Office of Adjudication and Compliance (OAC). Mr. Cottrell alleged that USDA discriminated against him in favor of older farmers and retaliated against him when he complained. As a basis for his claims of discrimination and reprisal, Mr. Cottrell alleged:

> (1) In 1999, the Farm Service Agency (FSA)[5] refused to provide an accounting of funds under Mr. Cottrell's CRP contract;
>
> (2) From 1995-2000, FSA failed to properly reconstitute land he leased and was later held to own, resulting in the nonpayment of benefits;
>
> (3) From 1995-2001, FSA improperly handled his loan file, causing unfavorable decisions on his program applications;
>
> (4) On January 1, 2001, FSA informed Mr. Cottrell that he was "being removed as a producer/operator" without prior notice;
>
> (5) In September 2001, FSA coerced him into giving up his right to mediation on a Coshocton County FSA decision; and
>
> (6) On September 5, 2001, FSA did not honor his 1995 crop acreage report, thereby denying him payment for the 1995 crop year.

2007 Final Decision at 1-2.

OAC described three events that likely were the genesis of Mr. Cottrell's age discrimination claim against USDA. *Id*. at 2 n.1. First, he took a youth loan in 1984 when he

---

[5] FSA was formerly known as Agricultural Stabilization Conservation Service.

was just 16. He did not repay the loan according to the schedule, and instead the loan was consolidated with two others. He used the loan to purchase cattle, which served as collateral on the loan, and then in 1992 or 1993, he sold or traded the cattle for farm equipment. He failed to notify FSA that he had conveyed the cattle and thus that FSA had lost the collateral on the loan. An FSA County Executive Director requested an investigation by the Office of Inspector General, but the Inspector General did not pursue it. *Id*. Thereafter, Mr. Cottrell was not approved for any more FSA loans. In 1994, USDA charged off the balance owed on the 1984 loan.

Second, when Mr. Cottrell was 18 years old (sometime around 1984), he sought to purchase inventory property, but his bid was rejected and the property was sold to an older farmer. At the time, the Coshocton County Executive Director said to Mr. Cottrell's father, "I know how badly the boy wanted the farm." This comment almost caused a fist fight between Mr. Cottrell and the Director. *Id*.

Third, in 1994 the Knox County Executive Director also reported to the Inspector General regarding another unspecified transaction involving Mr. Cottrell. The Inspector General again declined to proceed. *Id*.

On December 14, 2007, OAC entered a Final Decision finding that Mr. Cottrell's age discrimination and retaliation claims were untimely. *Id*. at 8. The complaint was based on events that occurred in 1999–2001. Administrative claims alleging discrimination in USDA programs must be filed within 180 days after the alleged act of discrimination, *see* 7 C.F.R. § 15.6, but Mr. Cottrell did not file his OAC complaint until 2006, five years after the last alleged act of discrimination.

OAC also found that, if treated as timely, Mr. Cottrell's claim lacked merit. OAC held that age did not play a part in USDA decision-making regarding the CRP contract:

> Consistently for twelve (12) years, the Coshocton County FSA Office and County Committee followed the advice of Agency Counsel, and relied on regulations, that they could do no more than make no decisions with respect to [Ms. Stuller's] estate lands under the CRP, pending the outcome of the Cottrell family litigation, or unless all potential heirs agreed. Since [Mr. Cottrell] was the only member of his generation involved in the land dispute litigation, it is not surprising that [he] held a perception that everyone who did not affirmatively support his position, was against him. . . . In fact, it was [Mr. Cottrell] who injected "age" into the County program decisions.

2007 Final Decision at 9. Further, OAC held that Mr. Cottrell did not establish a causal connection between the alleged retaliation and his various lawsuits against USDA. *Id*. at 11-12.

### D. This Lawsuit

Mr. Cottrell filed this suit against USDA in 2011, alleging the following claims:

(1) discrimination in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq*.;

(2) discrimination in violation of the Age Discrimination in Federal Programs Act (ADFPA), 42 U.S.C. § 6101 *et seq*.;

(3) violation of the Administrative Procedure Act, 5 U.S.C. §§ 553, 701–706, due to USDA's failure to investigate his civil rights claims;

(4) violation of the Privacy Act, 5 U.S.C. § 552a; and

(5) denial of due process under the Fifth Amendment.

Am. Compl. [Dkt. 13] at 40-42.

In support of these claims, Mr. Cottrell makes 136 rambling allegations of fact. *See id*. ¶¶ 5-1–5-136. Among those allegations, Mr. Cottrell complains about USDA's 1989 refusal to approve his CRP contract and USDA's 2001 denial of his 1996 PFC application. *See*

*id*. ¶¶ 5-54–5-61 (USDA would not approve the CRP application during the estate probate action); *id*. ¶¶ 5-104–105 (USDA denied the PFC application because an amended application needed to be filed). He also alleges that in 1987 USDA denied his bid for an inventory farm and referred to him as a "boy" even though he was an adult. *Id*. ¶ 5-23–25; *see also* 2007 Final Decision at 2 n.1 (referring to this same incident but stating that it occurred in 1985).

USDA moves to dismiss; Mr. Cottrell opposes. As explained below, the motion will be granted.

## II.  LEGAL STANDARD

USDA contends that the Complaint should be dismissed based on res judicata, applicable statutes of limitations, and failure to state a claim.[6] A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions" and the facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. (internal citations omitted). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about

---

[6] A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and not a motion to dismiss under Rule 12(b)(1), is the proper vehicle for USDA's assertion, as res judicata is not a jurisdictional bar to suit. *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006). Further, as a general rule, time limits for suing the government are presumptively subject to equitable tolling and therefore nonjurisdictional. *Menominee Indian Tribe v. United States*, 614 F.3d 519, 525 (D.C. Cir. 2010).

which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

### III.  ANALYSIS

#### A.  Res Judicata

Under the doctrine of res judicata, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979); *Apotex Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004). Res judicata advances the "purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153 (1979). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent

decisions." *Montana*, 440 U.S. at 153-54.  In short, the doctrine embodies the principle "that a party who once has had a *chance* to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so."  *SBC Comms. Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (quoting the Restatement (Second) of Judgments ch. 1 at 6 (1982)).

In sum, the four res judicata elements traditionally applied by this Court are: (1) an identity of parties; (2) a judgment from a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action.  *See, e.g.*, *Am. Forest Res. Council v. Shea*, 172 F. Supp. 2d 24, 29 (D.D.C. 2001); *see also U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985).  A plaintiff is required to present in a single suit all claims for relief that he may have arising out of the same transaction or occurrence.  *U.S. Indus.*, 765 F.2d at 205 (adopting pragmatic, transactional approach set forth in Restatement (Second) of Judgments § 23(2)).

Mr. Cottrell's claim regarding his 1989 CRP application already has been litigated on the merits.  The Southern District of Ohio granted summary judgment to USDA, finding that the denial of the 1989 CRP claim was not arbitrary and capricious, and the Sixth Circuit affirmed in 1994.  *See Cottrell*, 1994 WL 560967.  Due to res judicata, Mr. Cottrell's second suit in the Southern District of Ohio was barred.  *See Cottrell*, 71 Fed. Cl. at 561.  Mr. Cottrell attempted to litigate his 1989 CRP claim (again) and his 1996 PFC claim in the Court of Claims in 2005.  The Court of Claims determined that the CRP claim was barred by the statute of limitations and that the PFC claim was precluded because Mr. Cottrel failed to exhaust his administrative remedies.  *Id.* at 566, 568.  Mr. Cottrell argues that he never before brought an age discrimination claim or an equal credit opportunity claim under ADFPA or ECOA, respectively.  But Mr. Cottrell was required to bring *in a single suit* all claims arising out of the same transaction or occurrence, in

this case all claims arising from the facts surrounding the 1989 CRP claim.  *See U.S. Indus.*, 765 F.2d at 205.  He had a chance litigate all claims arising from the facts surrounding the 1989 CRP application and he is not entitled to yet another chance to do so.  *See SBC Comms*, 407 F.3d at 1229.  Therefore, all of Mr. Cottrell's claims arising from the facts surrounding his 1989 CRP application are barred by res judicata.

### B. Statute of Limitations

The following claims are barred by the statutes of limitations:  (1) claim regarding the 1989 CRP application; (2) claim regarding the 1996 PFC application; (3) claim regarding the 1987 denial of the bid for an inventory farm.

A claim under the Equal Credit Opportunity Act must be filed within two years after the alleged discrimination occurred.  *See Palmer v. Homecomings Financial LLC*, 677 F. Supp. 2d 233, 239 (D.D.C. 2010) (citing prior version of 15 U.S.C. § 1691e(f)).[7]  Mr. Cottrell here alleges that USDA denied him access to credit due to his young age, because of actions taken by USDA between 1987 and 2001.  He filed this suit on August 19, 2011, ten years after the last of these events.  Thus, the statute of limitations had expired, and the Amended Complaint was filed too late.[8]

---

[7] The statute of limitations was two years at the applicable time.  Congress has since amended ECOA and the statute of limitations is now five years.  15 U.S.C. § 1691e(f) (2010 Amendment).  Mr. Cottrell's claims are not timely under the old or the new statute.

[8] In 1998, Congress passed legislation reviving ECOA claims that were filed with USDA between 1981 and 1996 but that had been barred by the two year statute of limitations.  Section 741 of the 1999 Supplemental Appropriations Act created a window where farmers could choose to file their claims in federal court or with the USDA, and (if USDA denied the claim) farmers could then seek review under section 741.  *See* Agriculture, Rural Development, Food and Drug Administration and Related Agencies Appropriation Act, Pub. L. No. 105-277, Div. A, § 101(a) [referred to as "Section 741"], 112 Stat 2681-30 (1998), *reprinted in* 7 U.S.C. § 2279 (Notes).  A

Unless another statute prescribes otherwise, a suit challenging a final agency action under the APA must be commenced within six years of the time the claim accrues. *Harris v. FAA*, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004) (applying general limitations period set forth in 28 U.S.C. § 2401, which governs suits against the United States). An APA right of action accrues on the date of final agency action. *Id*. at 1010. The last USDA action complained of here occurred in 2001 and this suit was not filed until 2011; thus any APA claim is barred because more than six years passed.[9]

Mr. Cottrell believed at the relevant times that he was wronged by USDA's denial of his participation in various programs, as evidenced by his many persistent complaints over the past twenty years. He cannot assert that he did not know of his claims, and he has not provided any evidence that USDA somehow concealed its actions. Accordingly, equitable tolling is not available, and the ECOA and APA claims are barred.

### C. Age Discrimination In Federal Programs

A claim under ADFPA—alleging age discrimination in federal programs—simply does not apply to programs, like those at issue here, that are conducted directly by a federal agency using its own budget. *Maloney v. Social Security Admin.*, 517 F.3d 70, 75-76 (2d Cir.

---

prerequisite is that a plaintiff must submit a request for treatment under Section 741. *See Benoit v. USDA*, 608 F.3d 17, 19-20 (D.C. Cir. 2010). Mr. Cottrell never made a Section 741 request.

[9] It is not clear, exactly, which USDA actions Mr. Cottrell alleges violated the APA. It appears he intends to claim that USDA denied access to credit based on his age. The APA, however, provides for judicial review only where there is no other adequate remedy. 5 U.S.C. § 704; *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009); *Love v. Connor*, 525 F. Supp. 2d 155, 158 (D.D.C. 2005). "[W]here a victim of discrimination can sue directly to remedy her injury, no action will lie under the APA for failure to adequately investigate, monitor, or police that discrimination." *Love*, 525 F. Supp. 2d at 160. Mr. Cottrell's claims regarding denial of credit are adequately covered by ECOA. Thus for this reason as well, Mr. Cottrell's APA claims are not actionable.

2008); *cf. Williams v. Glickman*, 936 F. Supp. 1, 5-6 (D.D.C. 1996) (Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, does not apply to programs conducted by federal agencies).  Accordingly, Mr. Cottrell's ADFPA claim against USDA must be dismissed.

### D.  Privacy Act

Mr. Cottrell also alleges that USDA violated the Privacy Act, 5 U.S.C. § 552a, due to its failure to maintain a "Master File" regarding the CRP contract.  Am. Compl. at 41; Opp. [Dkt. 20] at 39-41, 43.  Mr. Cottrell seeks money damages for allegedly intentional wrongful conduct under 5 U.S.C. § 552a(g)(4).  The situation regarding the Master File is more fully explained in a letter from USDA to Mr. Cottrell dated October 6, 2010.  *See* Am. Compl., Ex. 117 [Dkt. 13-4] at 68-69 (Oct. 6, 2010 Letter).  The October 6 letter responded to Mr. Cottrell's request for the release of the Master File regarding the 1989 CRP application and explained why the request was denied as follows:

> In this case, the CRP contract file that was created when you submitted the 1989 application existed only in paper format.  The automated Master CRP Contract File [the format you requested] included only CRP contract information for approved contracts.  Your 1989 CRP application was not accepted because producer and land eligibility requirements in effect for CRP in 1989 were not met.  As your 1989 contract was not approved, the Coshocton County FSA Office did not add the contract information in the automated Master CRP Contract File.

*Id*.  While Mr. Cottrell does not specify the nature of his Privacy Act claim, it appears to arise from his request for the automated Master File regarding the 1989 CRP application and the agency's response that the information was not in the automated file.

The Privacy Act requires an agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy . . . and completeness as is reasonably necessary to assure fairness to the individual in the

15

determination." 5 U.S.C. § 552a(e)(5).  The Privacy Act does not require that USDA maintain computerized records of unapproved CRP applications.  Mr. Cottrell's complaint that certain records were not held in an automated Master File does not state a claim under the Privacy Act.[10]

### E.  Fifth Amendment Due Process

Mr. Cottrell also alleges that USDA violated his right to due process under the Fifth Amendment because "his several administrative civil rights complaints . . . had been dismissed thus denying him opportunity to appeal the agency's decision."  Am. Compl. at 40-41. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  To make out a claim for denial of due process, a plaintiff must identify the process that was due but denied.  *Doe v. District of Columbia*, 93 F.3d 861, 869-70 (D.C. Cir. 1996).  Mr. Cottrell fails to point to any particular instance where he was denied an opportunity to be heard on any particular issue. Further, he was afforded substantial process, as demonstrated by his many lawsuits.  His due process claim will be dismissed.

### F.  Additional Plaintiffs and Motion to File Second Amended Complaint

#### 1.  Lloyd Morrison, Jr.

When Mr. Cottrell filed an Amended Complaint, he added Lloyd Morrison, Jr. as an additional pro se plaintiff.  *see* Am. Compl. [Dkt. 13].  Mr. Morrison asserts

---

[10] USDA contends that Mr. Cottrell's Privacy Act claim is barred by the applicable two-year statute of limitations under 5 U.S.C. § 552a(g)(5) because "he was under an obligation to review his records and request amendment within two years" since he should have known the records were inaccurate.  *See* Reply [Dkt. 23] at 4 (citing *Bernard v. Dep't of Justice*, 362 F. Supp. 2d 272, 279 (D.D.C. 2005)).  However, Mr. Cottrell does not claim that the Master File was inaccurate and should be amended.  He appears to object to USDA's maintenance of nonapproved CRP applications in paper files.  As explained in the text above, this objection does not state a Privacy Act claim.

that USDA discriminated against him based on age when it denied him credit in 1988 and again in 1992. *See* Opp., Att. 2 (Morrison Aff.).[11] Thus, Mr. Morrison attempts to state an ECOA claim. As with Mr. Cottrell's ECOA claim, Mr. Morrison's ECOA claim must be dismissed as untimely. *See* 15 U.S.C. § 1691e(f) (two-year statute of limitations applies to ECOA claims).

### 2. Michael A. Cottrell

Mr. Cottrell also filed a motion for leave to file a Second Amended Complaint. The proposed Second Amended Complaint would add a new plaintiff, Mr. Cottrell's brother, Michael A. Cottrell. *See* Second Am. Compl. [Dkt. 19-1] ¶¶ 6-31, 6-35, 8-1–8-18. Michael Cottrell asserts that the USDA discriminated against him in 1988 and 1994 when it denied his applications to rent inventory farm property and that USDA failed to maintain the "Master File" of his 1989 CRP contract. As with Mr. Morrison's claims, Michael Cottrell's claims are improperly joined and he may not be added to this case. *See* Fed. R. Civ. P. 20. Moreover, to add Michael Cottrell's claims would be futile. *See Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (a motion to amend may be denied if to do so would be futile); Fed. R. Civ. P. 15(a)(2)). If the amendment were allowed, Michael Cottrell's claims would have to be dismissed for the same reasons that Mr. Cottrell's claims will be dismissed.

---

[11] Mr. Morrison's claims are separate and distinct from Mr. Cottrell's claims and are not properly joined here. *See* Fed. R. Civ. P. 20 (persons may be joined as plaintiffs in one action if they assert a claim arising out of the same transaction or occurrence or if they assert common questions of law or fact). The joining of Mr. Marshall cannot be construed as a request to bring a class action, as pro se plaintiffs may not bring class actions. *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) ("[F]ederal courts have consistently rejected attempts at third-party lay representation.").

### 3. Additional Factual Allegations

While the proposed Second Amended Complaint does not incorporate any new legal claims, it does include additional factual allegations. Even so, the new allegations do not save the case from summary judgment. For example, the additional allegations state that: (1) the 1989 CRP application was not added to the Master File, *see* Second Am. Compl. ¶¶ 6-57, 6-64, 6-165; (2) government agencies "intentionally concealed" Mr. Cottrell's rights, *see id*. ¶¶ 6-76–6-77, 6-112, 6-124; and (3) USDA "fraudulently" paid benefits to older farmers, *see id*. ¶¶ 6-97. These additional alleged facts do not alter the analysis set forth in this Opinion. *See Howell*, 843 F. Supp. 2d at 54; Fed. R. Civ. P. 15(a)(2). Accordingly, the motion for leave to file a Second Amended Compliant will be denied as futile.

### IV.  CONCLUSION

For the reasons stated above, the Secretary's motion to dismiss [Dkt. 15] will be granted, the motion for leave to file a Second Amended Complaint [Dkt. 19] will be denied, and this case will be dismissed. A memorializing Order accompanies this Opinion.

Date: January 4, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge